**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, as Receiver for ) | |
| LINCOLN PARK SAVINGS BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 CV 5083 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| FRANK BINETTI, GERALD COLLINS, ) | |
| KIMBERLY GEHRKE, DONNA PALER, ) | |
| JEFFREY WHEATLEY, AND LARRY ) | |
| WINDEL, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

The Federal Deposit Insurance Corporation ("the FDIC"), as receiver for Lincoln Park Savings Bank ("LPSB"), has brought suit against former LPSB employees Frank Binetti, Gerald Collins, Kimberly Gehrke, Donna Paler, Jeffrey Wheatley, and Larry Windel (collectively, "defendants"),[1] alleging that they breached their contracts with LPSB and misappropriated LPSB's trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.* LPSB also claims that Binetti breached his fiduciary duty to LPSB and tortiously interfered with LPSB's contractual relationships with the other defendants. Before the court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion [#7] is granted in part and denied in part.

---

[1] LPSB filed this complaint in state court on April 5, 2010. After LPSB was closed and placed in receivership by the Illinois Department of Financial and Professional Regulation on April 23, 2010, the FDIC substituted for LPSB as the plaintiff in the case. On August 12, 2010, the FDIC removed the case to federal court, pursuant to 12 U.S.C. § 1819(b)(2) and 28 U.S.C. §§ 1331 and 1441(b). Prior to removal, two other defendants named in the complaint, David Wescher and Michael Zwiezen, were voluntarily dismissed. Counts V and IX of the complaint, which are directed solely against Wescher and Zwiezen, are thus not before the court.

## BACKGROUND[2]

Defendants were LPSB employees who began their employment at various times throughout 2008 and 2009 and left LPSB's employ in 2010. Binetti was LPSB's regional sales manager and in charge of recruiting mortgage loan officers. The remaining defendants were loan officers. Defendants signed compensation policies that governed their employment with LPSB. Although they were at will employees, they agreed to be bound by certain terms and conditions during their employment. These included soliciting and originating loans exclusively for LPSB, protecting LPSB's trade secrets, and not retaining, using, or disclosing LPSB's confidential information at any time. Defendants acknowledged that their jobs required access to LPSB's confidential information, which was made available to them only on a need to know basis. Defendants agreed to "comply with a 1-year non-compete agreement if [they] terminate[d] employment with Lincoln Park Savings Bank voluntarily." Group Ex. 1 to Compl. at ¶ VIII(L)(h).

LPSB used a loan origination system to maintain information on loans procured by defendants and to track these loans until they were completed. The system created "a confidential method for LPSB to continue to service its customers and to procure more business by tracking loans contained in [it]." Compl. ¶ 31. Defendants input, maintained, and updated information in the system. LPSB intentionally kept the information in the loan origination system secret and confidential.

---

[2] The facts are taken from the complaint and the exhibits attached to it and are presumed to be true for the purpose of resolving the pending motion. The court takes judicial notice of the Cease and Desist Order entered into by LPSB, the Illinois Department of Financial and Professional Regulation, and the FDIC on October 6, 2009 and the April 23, 2010 closure of LPSB. *See Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

Around July 2009, defendants began soliciting loans for other banks and lenders and removing pre-existing loans from the loan origination system and transferring them to another financial institution even though they were still employed by LPSB. In doing so, they used LPSB's proprietary information and customer lists. Binetti agreed to work for another bank and have his leads and loans transferred to this other bank around November 2009. Binetti also convinced the other defendants to leave LPSB and take customers with them. By January 2010, all defendants had agreed to leave LPSB and take LPSB loans with them to another financial institution. By departing, defendants entered direct competition with LPSB and deprived LPSB of existing customers.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not

plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

**I.     ITSA Claim**

To state a claim under ITSA, LPSB must allege that "the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business."[3] *Learning Curve Toys, Inc.* v. *PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003). A trade secret is defined as

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. 1065/2(d). A trade secret is misappropriated if it is disclosed by a person who "knew or had reason to know that knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Id.* 1065/2(b)(2).

Defendants argue that LPSB has failed to adequately allege both the existence of a trade secret and actual or threatened misappropriation of a trade secret. Instead, they contend that the

---

[3] Several courts have concluded that an ITSA misappropriation claim more accurately requires the following elements: "(1) a trade secret existed; (2) the secret was misappropriated through improper acquisition, disclosure, or use; and (3) the owner of the trade secret was damaged by the misappropriation." *Liebert Corp.* v. *Mazur*, 827 N.E.2d 909, 925, 357 Ill. App. 3d 265, 293 Ill. Dec. 28 (2005); *see Parus Holdings, Inc.* v. *Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1003–05 (N.D. Ill. 2008). The proper formulation is not dispositive in this case.

4

complaint only recites the statutory elements of a trade secret claim and is improperly based on allegations made on information and belief. Defendants mistakenly rely on cases decided at stages other than a motion to dismiss or under Illinois's fact-pleading standard in support of dismissal. "The existence of a trade secret ordinarily is a question of fact . . . . best resolved by a fact finder after full presentation of evidence from each side." *Learning Curve Toys*, 342 F.3d at 723 (citations omitted) (internal quotation marks omitted). At the same time, however, "mere rote repetition of the statutory language does not suffice." *Magellan Int'l Corp.* v. *Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999). While "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated," *Composite Marine Propellers, Inc.* v. *Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992), trade secrets "need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *AutoMed Techs., Inc.* v. *Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (quoting *Leucadia, Inc.* v. *Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991). In arguing that LPSB's complaint only repeats ITSA's language, defendants ignore that LPSB has provided enough factual detail to sufficiently put defendants on notice of the substance of the claims against them. *See Dick Corp.* v. *SNC-Lavalin Constructors, Inc.*, No. 04 C 1043, 2004 WL 2967556, at *9 (N.D. Ill. Nov. 24, 2004) ("The query is whether the allegations provide the defendants with notice as to the substance of the claims."). Although the complaint is not a model of specificity, LPSB has alleged that defendants had access to its trade secrets, specifically, confidential customer and other information contained in its loan origination system. LPSB has further alleged that it expended extensive efforts to ensure that

5

this information remained secret and confidential. The compensation policies reflect this, stating that LPSB only made confidential business information available to select employees on a need to know basis, that defendants agreed not to retain, use, or disclose this confidential information, and that defendants agreed to protect LPSB's trade secrets. "An agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret." *Dick Corp.*, 2004 WL 2967556, at *10. Similar allegations have been found sufficient to state an ITSA misappropriation claim, even after *Twombly* and *Iqbal*. *See, e.g.*, *Adams* v. *Pull'r Holding Co.*, No. 09 C 7170, 2010 WL 1611078, at *6 (N.D. Ill. Apr. 20, 2010); *Zep, Inc.* v. *First Aid Corp.*, No. 09 CV 1973, 2010 WL 1195094, at *10 (N.D. Ill. Mar. 19, 2010); *Aspen Mktg. Servs., Inc.* v. *Russell*, No. 09 C 2864, 2009 WL 4674061, at *7–8 (N.D. Ill. Dec. 3, 2009).

Defendants' additional argument that LPSB has not adequately alleged misappropriation because its allegations are based on information and belief is similarly unavailing. Although pleading based on information and belief is not appropriate for claims subject to Rule 9(b)'s heightened pleading standard, *Bankers Trust Co.* v. *Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992), the Seventh Circuit has approved the use of such pleading under Rule 8. *Brown* v. *Budz*, 398 F.3d 904, 914 (7th Cir. 2005). After *Brown*, the Supreme Court in *Twombly* and *Iqbal* made clear that conclusional allegations do not satisfy Rule 8(a), but "the Supreme Court did not strike [the phrase 'upon information and belief'] from the lexicon when it made the pleading rules more demanding." *Smith* v. *Harvey*, No. 08 C 816, 2010 WL 1292473, at *4 (N.D. Ill. Mar. 29, 2010); *see also Trustees of the Auto. Mechs. Indus. Welfare & Pension Funds Local 701* v. *Elmhurst Lincoln Mercury*, 677 F. Supp. 2d 1053, 1054–55 (N.D. Ill. 2010). The court declines to find that LPSB's pleading based on information and belief is improper. While

6

LPSB will have to provide a more detailed explanation of its trade secrets and the manner in which defendants misappropriated them to prevail and likely faces an uphill battle in doing so, the court will not dismiss the ITSA claim at this stage.[4]

## II.      Breach of Contract Claims

To state a breach of contract claim under Illinois law, LPSB must allege (1) the existence of a valid contract; (2) performance of its contractual obligations; (3) breach by defendants; and (4) resulting damages. *Akinyemi* v. *JP Morgan Chase Bank, N.A.*, 908 N.E.2d 163, 168, 391 Ill. App. 3d 334, 330 Ill. Dec. 311 (2009). LPSB alleges that, among other things, defendants agreed to obtain leads and solicit and originate loans exclusively for LPSB while employed by it, to protect LPSB's trade secrets, and to comply with a one year non-competition agreement with LPSB. Defendants allegedly violated the compensation policies by directly competing or attempting to compete with LPSB by soliciting and originating loans for other institutions while still in LPSB's employ, failing to protect LPSB's trade secrets and confidential information, making false representations and warranties regarding their non-competition agreements, persuading loan officers to leave their employment with LPSB, and not complying with the one year non-competition agreement.

---

[4] As the court is providing LPSB with the opportunity to file an amended complaint, it may be wise for LPSB to provide greater detail regarding its ITSA and other surviving claims in its amended complaint.

### A. Non-Competition Agreement

Defendants argue that LPSB's breach of contract claims fail because the restrictive covenants in the compensation policies are unenforceable. Illinois courts closely scrutinize covenants not to compete as they are restraints on trade. *Cambridge Eng'g, Inc.* v. *Mercury Partners 90 BI, Inc.*, 879 N.E.2d 512, 522, 378 Ill. App. 3d 437, 316 Ill. Dec. 445 (2007); *The Agency, Inc.* v. *Grove*, 839 N.E.2d 606, 613–14, 362 Ill. App. 3d 206, 298 Ill. Dec. 283 (2005). A restrictive covenant is only valid and enforceable if the terms are "reasonable and necessary to protect a legitimate business interest of the employer." *Cambridge Eng'g, Inc.*, 879 N.E.2d at 522 (quoting *Lawrence & Allen, Inc.* v. *Cambridge Human Res. Group, Inc.*, 658 N.E.2d 434, 441, 292 Ill. App. 3d 131, 226 Ill. Dec. 331 (1997)). The terms (1) must not be greater than necessary to protect the employer, (2) must not be oppressive to the employee, and (3) must not injure the general public. *Liautaud* v. *Liautaud*, 221 F.3d 981, 987 (7th Cir. 2000) (collecting Illinois cases). Whether a restrictive covenant is reasonable is a question of law to be decided by the court. *Id.* at 986. The court must consider the propriety of the restrictions in terms of their length in time, their territorial scope, and the activities they restrict. *Cambridge Eng'g, Inc.*, 879 N.E.2d at 522. Reasonableness cannot be determined in the abstract, however, and it necessarily depends on the unique facts and circumstances of each case. *Liautaud*, 221 F.3d at 987. The employer bears the burden of establishing that the full extent of the restriction is necessary to protect its interests. *Cambridge Eng'g, Inc.*, 879 N.E.2d at 522.

Here, the non-competition agreements state only that defendants "will comply with a 1-year non-compete agreement if the Mortgage Loan Officer terminates employment with Lincoln Park Savings Bank voluntarily." Group Ex. 1 to Compl. at ¶ VIII(L)(h). No further elaboration

8

on the territorial scope of or the type of activities restricted by the agreement is provided. While LPSB asserts in its response to the motion to dismiss that defendants are prohibited solely from soliciting or taking customers away from LPSB and not from working for a competitor, there is no indication from the compensation policies or the complaint that this is the case. Further, the allegations of the complaint belie LPSB's belated explanation, as the complaint only contains allegations that defendants solicited and took customers away from LPSB while still working for it, not after terminating their employment with LPSB. This would not be a breach of a non-compete agreement that only goes into effect after an employee's separation from his employer. From the complaint's allegations, the only possible manner in which defendants could have breached the non-compete is by the very act of working for a competitor after leaving LPSB, which LPSB claims that the non-compete does not prevent. Because the essential terms of the non-compete remain undefined and the complaint does not support LPSB's explanation of the covenant's scope, no claim for breach of the non-competition agreement has been stated. It also appears unlikely that such an undefined restrictive covenant can be enforced. *See Unisource Worldwide, Inc.* v. *Carrara*, 244 F. Supp. 2d 977, 982 (C.D. Ill. 2003) (finding that a restrictive covenant is unenforceable where the essential terms are not definite or intelligible).

Additionally, as no allegations in the complaint support LPSB's claim that defendants breached their contract by making false representations and warranties regarding non-competition agreements, these claims will also be dismissed.

### B. Solicitation and Origination of Loans While Employed by LPSB

LPSB also bases its breach of contract claims on defendants' alleged solicitation and origination of loans for other financial institutions while employed by LPSB. The compensation

policies specifically required defendants to solicit and originate loans exclusively for LPSB while employed. Defendants do not challenge the validity of these provisions, instead arguing that LPSB has failed to specify what loans or customers it lost. At this stage, LPSB need not provide customer names or describe the loans it lost to state a plausible claim. Defendants' additional argument that customers likely transferred their business to another financial institution because LPSB was unable to fund loans or because customers suspected LPSB's imminent closure goes beyond the complaint and constitutes improper speculation. Such topics may be further explored in discovery.

      C.      **Trade Secrets**

As the court has concluded above, LPSB has stated a claim for trade secret misappropriation. Defendants' agreements with LPSB included provisions that they would protect LPSB's trade secrets as loan officers and not at any time retain, use, or disclose any of LPSB's confidential information. Like covenants not to compete, post-employment confidentiality provisions must be reasonable in order to be enforceable. *Coady* v. *Harpo, Inc.*, 719 N.E.2d 244, 250, 308 Ill. App. 3d 153, 241 Ill. Dec. 383 (1999). "[A] confidentiality agreement will not be deemed unenforceable for lack of durational or geographic limitations where trade secrets and confidential information are involved," however. *Id.* The court need not determine whether the post-employment confidentiality provisions in this case are reasonable to decide whether the claim survives this motion to dismiss, as LPSB has alleged that defendants' breach began while still employed by LPSB. As noted above, further development will be necessary to determine whether the information defendants failed to protect and divulged to other financial institutions qualifies as a trade secret or confidential information and whether the

restrictions on disclosure are reasonable. At this stage, however, LPSB has stated a claim for breach of contract based on defendants' alleged failure to protect LPSB's trade secrets and confidential information.

### D. Persuasion of Loan Officers to Leave LPSB

LPSB has alleged that defendants breached their contracts with LPSB by persuading other loan officers to leave LPSB. LPSB has not alleged, however, that non-solicitation of co-workers to leave LPSB was a term or condition of employment in the compensation policies. Thus, its breach of contract claims for solicitation are unfounded and will be dismissed. LPSB's allegations that Binetti solicited the other defendants to leave LPSB will be discussed in connection with its breach of fiduciary duty claim.

## III. Tortious Interference with Contract Claim

A claim for tortious interference with a contract requires:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676, 131 Ill. 2d 145, 137 Ill. Dec. 19 (1989) (quoting *Prudential Ins. Co.* v. *Van Matre*, 511 N.E.2d 740, 744, 158 Ill. App. 3d 298, 110 Ill. Dec. 563 (1987) (internal quotation marks omitted)); *see also Complete Conference Coordinators, Inc.* v. *Kumon N. Am., Inc.*, 915 N.E.2d 88, 93, 394 Ill. App. 3d 105, 333 Ill. Dec. 567 (2009). LPSB alleges that Binetti convinced the other defendants to leave LPSB and to take LPSB's customers with them, breaching their non-compete agreements. As

11

the court has found that LPSB has not stated a claim for breach of the non-competition agreements, LPSB's interference claim will be dismissed as well.

## IV. Breach of Fiduciary Duty Claim

To prevail on its breach of fiduciary duty claim, LPSB must establish that (1) Binetti owed LPSB a fiduciary duty, (2) Binetti breached this duty, and (3) the breach proximately caused LPSB injury. *Neade* v. *Portes*, 739 N.E.2d 496, 193 Ill. 2d 433, 250 Ill. Dec. 733 (Ill. 2000). Binetti owed LPSB a duty of loyalty while employed by it, which included the duty not to solicit customers or co-workers away from LPSB. *See Dames & Moore* v. *Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 823 (N.D. Ill. 1998) (citing *ABC Trans Nat'l Transp., Inc.* v. *Aeronautics Forwarders, Inc.*, 379 N.E.2d 1228, 1237, 62 Ill. App. 3d 671, 20 Ill. Dec. 160 (1978)); *Hill* v. *Names & Addresses, Inc.*, 571 N.E.2d 1085, 212 Ill. App. 3d 1065, 157 Ill. Dec. 66 (1991) ("In breach of her duty of loyalty to her employer, [the employee] cooperated in the solicitation of [her assistant] and in her resulting job interview while both were still employed by [the employer], but after [the employee] had accepted [another] offer."). LPSB has alleged that Binetti solicited both customers and co-workers on behalf of another financial institution while still employed by LPSB. This sufficiently states a breach of fiduciary duty claim. To the extent LPSB's claim is based on Binetti's actions after leaving LPSB, the claim will be dismissed, for Binetti's fiduciary duty was extinguished once his employment relationship with LPSB ended. *See Dames & Moore*, 21 F. Supp. 2d at 823.

**CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion to dismiss [#7] is granted in part and denied in part. The breach of contract claims based on the non-competition agreements, actions to persuade other employees to leave LPSB, and false representations regarding the non-competition agreements and the tortious interference with contract claim against Binetti are dismissed without prejudice and with leave to replead. The breach of fiduciary duty claim against Binetti for actions he allegedly took after his employment with LPSB ended is dismissed with prejudice. LPSB has until February 18, 2011 to file an amended complaint.

Dated: January 26, 2011　　　　　　　　　　Enter: _____
　　　　　　　　　　　　　　　　　　　　　　　　JOAN HUMPHREY LEFKOW
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge